# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                                     MASSACHUSETTS TRIAL COURT
                                                                SUPERIOR COURT DEPARTMENT
RECEIVED & FILED                                                DOCKET NO.
CLERK OF THE COURTS
NORFOLK COUNTY                                                  15 01153

COLUCCI, COLUCCI, MARCUS,
AND FLAVIN, P.C.,

   Plaintiff,

V.

CITIZENS BANK OF
MASSACHUSETTS,

   Defendant.

## COMPLAINT AND JURY DEMAND

I. <u>PARTIES</u>

1. The Plaintiff, COLUCCI, COLUCCI, MARCUS, AND FLAVIN, P.C., is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 424 Adams Street, Suite 100, Milton, Norfolk County, Massachusetts.

2. The Defendant, CITIZENS BANK OF MASSACHUSETTS, is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 28 State Street, Boston, Suffolk County, Massachusetts.

II. <u>FACTS</u>

3. On or around June 2, 2015, a person identifying himself as "Michael P. Morris, Jr.", President of Darius Industrial, Inc. (hereafter "Mr. Morris"), contacted Colucci, Colucci, Marcus, and Flavin, P.C. (hereafter "CCMF") via email seeking legal representation for the collection of a debt.

4. On or around June 3, 2015, CCMF Attorney Paul Flavin spoke by telephone with "Mr. Morris", who explained that a customer of his, Eastern Tool Corp., in Medford, Massachusetts owed an outstanding amount of $298,750.00 and that he wanted to retain CCMF to enforce collection of this account receivable.

1

Case 1:15-cv-13536-GAO   Document 1-2   Filed 10/09/15   Page 3 of 10

5. Attorney Flavin quoted Mr. Morris a $1,000.00 retainer to draft and send a demand letter on behalf of Darius Industrial, Inc. Mr. Morris agreed to pay the $1,000.00 retainer to secure CCMF's representation.

6. On or around June 3, 2015, CCMF sent an engagement letter to Mr. Morris via email requesting that he review, sign and return the engagement letter to the firm along with the $1,000.00 retainer.

7. On or around June 8, 2015, Mr. Morris returned the engagement letter via email and wrote that he had been communicating with Mr. Joseph Fustolo of Eastern Tool Corp. and that after threatening legal action through CCMF, the debtor offered a payment plan to pay the full amount in two installments, with the first to be sent to and payable to CCMF.

8. On or around June 11, 2015, Mr. Morris wrote an email to CCMF stating that he was informed by the debtor that a payment was being delivered to the firm and requested that the firm confirm receipt of the payment and deposit into CCMF's trust account.

9. On or around June 11, 2015 CCMF received a letter dated June 8, 2015, allegedly from Joseph Fustolo, President of Eastern Tool Corp., stating that his company owed the aforesaid debt and proposing a payment schedule. Enclosed was also a document that purported to be a "Certified Bank Check" (hereafter the "Fraudulent Check") drawn on Scotia Bank in the amount of $198,750.00 representing partial payment owed to Darius Industrial, Inc.

10. On or around June 11, 2015, Attorney Flavin, upon receipt of the purported Eastern Tool Corp. letter and Fraudulent Check, wrote to Mr. Morris by email acknowledging that the firm had received the Fraudulent Check.

11. Attorney Flavin by email confirmed with Mr. Morris his instructions to (i) deposit the aforesaid check into the firm's trust account and once cleared, (ii) deduct the retainer amount and (iii) issue a check in the net amount to Darius Industrial, Inc.. Attorney Flavin's email also inquired as to whether or not the proposed payment plan was acceptable and if so, confirming that CCMF would hold off instituting formal legal action pending receipt of the final payment.

12. Mr. Morris responded to Attorney Flavin by email and confirmed his authority to Attorney Flavin to deposit the payment and, when funds cleared, deduct its retainer fee. Mr. Morris also asserted in his response email that he would provide further instructions regarding the disbursement of the balance of the funds.

13. Per Mr. Morris's request, the Fraudulent Check was deposited by Attorney Flavin into the CCMF's IOLTA trust account with Citizens Bank on June 12, 2015 at Citizens Bank branch in Marshfield, Massachusetts.

14. Upon information and belief, Citizens Bank did not take any measures to verify the authenticity of the Fraudulent Check.

15. On June 15, 2015, CCMF accessed its account online and confirmed that $198,750.00 was credited to the CCMF IOLTA trust account.

16. On June 15, 2015, Mr. Morris sent an email to CCMF requesting that CCMF immediately wire the funds to an account at Chase Bank.

17. Despite having accessed the account online, Darin Colucci, managing partner of CCMF, traveled to the Milton, Massachusetts branch office of Citizens Bank to verify that the deposit of $198,750.00 had, in fact, cleared and all of the deposited funds were in the CCMF IOLTA trust account before authorizing the wire transfer requested by Mr. Morris.

18. Attorney Colucci met with Evelyn Zayas (hereafter "Ms. Zayas") in order to confirm the deposit had cleared and all of the deposited funds were in the CCMF IOLTA trust account.

19. Attorney Colucci informed Ms. Zayas that the deposit was made on June 12, 2015 and showed Ms. Zayas the computer account printout showing the funds were available. Although the printout showed the funds as "available", Attorney Colucci asked Ms. Zayas to confirm that the deposit had cleared and that all of the funds were in the CCMF IOLTA trust account before making the wire transfer.

20. In Attorney Colucci's presence, Ms. Zayas checked the Citizens Bank computer system and informed Attorney Colucci that the Fraudulent Check had cleared and that all of the funds were in the CCMF IOLTA trust account.

21. Only after receiving confirmation from Ms. Zayas that the Fraudulent Check had cleared and all of the collected funds were in the CCMF trust account, Attorney Colucci authorized Ms. Zayas to complete the wire transfer of $198,750.00 to Chase Bank per Mr. Morris's wiring instructions.

22. On or around June 16, 2105, Mr. Morris contacted CCMF and said that he never received the wired funds. Attorney Colucci returned to Citizens Bank and again saw Ms. Zayas to inquire about the status of the wired funds.

23. Ms. Zayas verified that the wire had gone through and that the funds were in Chase Bank.

24. After Mr. Morris again contacted CCMF to complain that he could not access the funds at Chase Bank, Attorney Colucci returned to Citizens Bank again and spoke with Ms. Zayas, who again confirmed that the funds were at Chase Bank and available to Mr. Morris.

3

25. On June 17, 2015, Citizens Bank received notification that the Fraudulent Check was fraudulent.

26. On or around June 22, 2015, Citizens Bank sent CCMF via facsimile a "Returned Deposited Item Notice" dated June 17, 2015 indicating the Fraudulent Check was being returned for being "Altered/Fictitious".

27. Attorney Colucci immediately returned to the Citizens Bank and spoke to Ms. Zayas about the Returned Deposited Item Notice. Ms. Zayas again confirmed that she had verified that the Fraudulent Check had cleared before wiring the funds to Chase Bank.

28. Ms. Zayas informed Attorney Colucci for the first time that Citizens Bank has a "Next Day Availability" program and that although the funds were available, the check had not cleared. This was the first time Ms. Zayas mentioned the "Next Day Availability" program.

29. Ms. Zayas admitted to Attorney Colucci that at no time did she ever discuss, allude to or reference that the Fraudulent Check had not yet cleared.

30. Citizens Bank charged back CCMF's IOLTA trust account in the amount of $198,750.00.

31. On that same day, June 22, 2015, Attorney Colucci requested that Citizens Bank undertake a "recall" with Chase Bank.

32. Citizens Bank first contacted Chase Bank regarding the Fraudulent Check on June 25, 2015, eight (8) days after learning of the Fraudulent Check.

33. On July 7, 2015, CCMF sent Citizens Bank a demand letter pursuant to M.G.L. ch. 93A demanding payment in the amount of $198,750.00 plus attorney fees and a refund of all wiring fees collected by Citizens Bank.

34. Upon information and belief, on August 13, 2015, Chase Bank returned $69,738.17 to Citizens Bank.

35. On August 18th, Citizens Bank informed CCMF that the returned $69,738.17 had been deposited into the CCMF IOLTA Trust Account.

## COUNT I – NEGLIGENCE

36. The Plaintiff incorporates all of the paragraphs above as if set forth herein.

37. Citizens Bank owed CCMF a duty of reasonable care in providing banking services to CCMF, including but not limited to its deposit, presentment, and collection of the funds ordered on the Fraudulent Check.

4

38. Citizens Bank breached its duty by failing to employ sufficient security measures and procedures to detect the Fraudulent Check at the time of deposit.

39. Citizens Bank, through its agents, servants, and employees breached its duty by failing to detect the Fraudulent Check at the time of deposit.

40. Citizens Bank breached its duty by failing to contact Chase Bank in a timely manner upon learning of the Fraudulent Check to determine the status of the funds.

41. Citizens Bank breached its duty by failing to notify CCMF of the Fraudulent Check in a timely manner.

42. As a result of Citizens Bank breach of its duty, CCMF has suffered damages including but not limited to the loss of $129,011.83, plus wiring fees, interest, costs, and attorney's fees.

### COUNT II – VIOLATION OF M.G.L. C. 106 §4-202

43. The Plaintiff incorporates all of the paragraphs above as if set forth herein.

44. M.G.L. c. 106 §4-202 requires that Citizens Bank send notice to CCMF of the Fraudulent Check upon learning it had not been accepted before the midnight deadline. M.G.L. c. 106 §4-104(10) defines the midnight deadline as "midnight on its next banking day following the banking day on which it received the relevant item or notice."

45. The "Returned Deposited Item Notice" was dated June 17, 2015.

46. Citizens Bank did not send the notice to CCMF until June 22, 2015, at least three (3) banking days after it learned the Fraudulent Check had not been accepted.

47. As a result of Citizens Bank's violation of M.G.L. c. 106 §4-202, CCMF has suffered damages including but not limited to the loss of $129,011.83, plus wiring fees, interest, costs, and attorney's fees.

### COUNT III – NEGLIGENT MISREPRESENTATION

48. The Plaintiff incorporates all of the above paragraphs as if set forth herein.

49. Citizens Bank, in providing bank services to CCMF, falsely informed CCMF that the Fraudulent Check had cleared and the funds were in the CCMF IOLTA trust account when, in fact, that was not the case.

50. Citizens Bank failed to exercise reasonable care or competence in determining whether the the Fraudulent Check had cleared and communicating that information to CCMF.

51. CCMF relied upon the false information provided by Citizens Bank and would not have authorized the wire transfer if it had known the funds from the Fraudulent Check had not cleared and were not in the CCMF IOLTA trust account.

52. As a result of Citizens Bank's negligent misrepresentation, CCMF has suffered damages including but not limited to the loss of $129,011.83, plus wiring fees, interest, costs, and attorney's fees.

## COUNT IV – VIOLATION OF M.G.L. CH. 93A

53. The Plaintiff incorporates all of the above paragraphs as if set forth herein.

54. At all relevant times, Citizens Bank was engaged in trade or commerce within the Commonwealth of Massachusetts and the acts at issue occurred within the Commonwealth.

55. The conduct of Citizens Bank, as described above, constitutes unfair and deceptive acts in violation of M.G.L. c. 93A, §§2, 9.

56. On July 7, 2015, CCMF sent a demand letter to Citizens Bank (See Attachment 1).

57. Citizens Bank responded on August 4, 2015 but did not make any offer of settlement.

58. As a result of the Citizens Bank's violations of M.G.L. c. 93A, CCMF has suffered and continues to suffer damages.

59. Citizens Bank's violations of M.G.L. c. 93A, including, but not limited to failure to respond with a reasonable settlement offer, was willful and intentional, and therefore, CCMF is entitled to multiple damages and attorney's fees.

## COUNT V – MONEY HAD AND RECEIVED

60. The Plaintiff incorporates all of the above paragraphs as if set forth herein.

61. CCMF delivered to Citizens Bank, CCMF's agent, and Citizens Bank received, money belonging to CCMF in the amount of $198,750.00.

62. Citizens Bank presently has in its possession the sum of $129,011.83, which in equity and good conscience, should be returned to CCMF.

63. Citizens Bank shall return to CCMF the money at issue, in the sum of $129,011.83, plus wiring fees, interest and costs, and attorney's fees.

## COUNT VI – CONVERSION

64. The Plaintiff incorporates all of the above paragraphs as if set forth herein.

65. Citizens Bank has debited CCMF's IOLTA trust account in the amount of $129,011.83 plus wiring costs.

66. Citizens Bank has deliberately taken dominion and control of the aforementioned monies, gave nothing of value to CCMF and has no intention of returning the money.

67. Citizens Bank's exercise of dominion and control over this money was not authorized by CCMF.

68. By reasons of the acts alleged herein, CCMF has suffered damages including but not limited to the loss of $129,011.83, plus wiring fees, interest, costs, and attorney's fees.

## COUNT VII – PROMISSORY ESTOPPEL

69. The Plaintiff incorporates all of the above paragraphs as if set forth herein.

70. Citizens Bank represented to CCMF that the funds from the Fraudulent Check had cleared and were in the CCMF IOLTA trust account with the knowledge that CCMF would rely upon such representation in deciding to authorize the wire transfer.

71. CCMF authorized the wire transfer upon its reasonable reliance on Citizens Bank's representation that the funds from the Fraudulent Check had cleared and were in the CCMF IOLTA trust account.

72. CCMF relied upon Citizens Bank representation to its detriment.

73. As a result of Citizens Bank's representation, CCMF has suffered damages including but not limited to the loss of $129,011.83, plus wiring fees, interest, costs, and attorney's fees.

**WHEREFORE**, the Plaintiff hereby requests the following relief:

1. Pursuant to Count I, grant judgment in favor of the plaintiff in the amount of damages to be proven at trial, along with interest, costs, and attorney's fees;

2. Pursuant to Count II, grant judgment in favor of the plaintiff in an amount of damages to be proven at trial, along with interest, costs, and attorney's fees;

3. Pursuant to Count III, grant judgment in favor of the plaintiff in an amount of damages to be proven at trial, along with interest, costs, and attorney's fees;

4.  Pursuant to Count IV, enter judgment against the defendant and award the plaintiff three times the amount of the plaintiff's damages, together with reasonable attorney's fees and the cost of this action;

5.  Pursuant to Count V, grant judgment in favor of the plaintiff in an amount of damages to be proven at trial, along with interest, costs, and attorney's fees.

6.  Pursuant to Count VI, grant judgment in favor of the plaintiff in an amount of damages to be proven at trial, along with interest, costs, and attorney's fees.

7.  Pursuant to Count VII, grant judgment in favor of the plaintiff in an amount of damages to be proven at trial, along with interest, costs, and attorney's fees.

8.  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

The plaintiff requests a trial by jury on all issues so triable.

Respectfully Submitted,

COLUCCI, COLUCCI, MARCUS, AND FLAVIN, P.C.,

By its attorneys,

_____
Paul K. Flavin (BBO# 171145)
Brendan R. Pitts (BBO# 673308)
Colucci, Colucci, Marcus & Flavin, P.C.
424 Adams Street
Milton, MA 02186
(617) 698-6000
PFlavin@coluccilaw.com
BPitts@coluccilaw.com

Dated: 9/2/15