UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13536-GAO

COLUCCI, COLUCCI, MARCUS & FLAVIN, P.C.,
Plaintiff,

v.

CITIZENS BANK OF MASSACHUSETTS,
Defendant.

OPINION AND ORDER
March 30, 2018

O'TOOLE, D.J.

## I. Undisputed Facts

The plaintiff Colucci, Colucci, Marcus & Flavin, P.C. ("CCMF") is a law firm in Milton, Massachusetts. It maintains the firm's IOLTA account at Citizens Bank of Massachusetts ("Citizens"). The contractual terms and conditions governing the IOLTA account are set forth in a Business Deposit Account Agreement, which was provided to CCMF when it opened the account. A section of the agreement entitled "Funds Availability Disclosure" explains that Citizens makes the funds from checks deposited at Citizens and drawn on another bank "available" to business customers the next business day after deposit. However, that section also informs the customer that "even after [Citizens has] made funds available to you, and you have withdrawn the funds, you are still responsible for checks that you deposit that are returned to us as unpaid."

On June 11, 2015, CCMF received on behalf of a client a check for $198,750 from a third party, in purported payment of a debt owed to the client. CCMF deposited the check to the IOLTA account the next day, June 12, a Friday. The following Monday, the client sent an email to CCMF

with wire transfer authorization and wiring instructions, which indicated that the money should be sent to an entity in New Orleans, Louisiana.

The same day that CCMF received the wiring instructions, the client called to inquire whether the check had cleared. CCMF's internal finance employee, Charles Delagrange ("Delagrange"), checked the IOLTA account online and verified that the funds from the check that had been deposited the previous business day (Friday) appeared to be credited to the account. Firm partner Darin Colucci ("Colucci") and Delagrange then went to their regular Citizens branch and met with Branch Manager Evelyn Zayas ("Zayas"). The pair wanted to confirm that the check had cleared and, if so, to make a wire transfer from CCMF's IOLTA account. In particular, Colucci wanted to make sure that the funds had cleared and were not merely "available" before any wire transfer was made. When asked whether the deposited check had "cleared," Zayas replied to Colucci and Delagrange with words to the effect of: "Yes, the money is there. You are all set."

After this exchange, Colucci executed a wire transfer authorization for $197,715 to the recipient designated by the client. Citizens accepted the wire transfer authorization and transmitted the funds according to the written instructions and authorization.

On Wednesday, June 17, Citizens received notice that the check that had been deposited on June 12 had been returned unpaid because it was "ALTERED/FICTITIOUS." Citizens notified CCMF that the check had been returned unpaid and that Citizens had subtracted the amount of the returned check from CCMF's account balance. Upon receipt of the notice from Citizens, Colucci returned to the Citizens branch and inquired why the amount of the check was deducted from CCMF's account. Citizens' Business Deposit Account Agreement permits it to charge back CCMF's account for returned checks.

**II.     Discussion**

The matter is before the Court on Citizens' motion for summary judgment.

CCMF originally filed a seven-count complaint against Citizens seeking damages flowing from the events described above. Through a joint stipulation of dismissal (dkt. no. 25) and oral concessions made by CCMF during a hearing on the present motion, only three claims are still being pursued by CCMF. The remaining claims are for negligent misrepresentation, promissory estoppel, and violation of Massachusetts General Laws Chapter 93A, Section 9. For the following reasons, Citizens is entitled to summary judgment in its favor on each.

   A.     Negligent Misrepresentation

CCMF alleges that Citizens falsely misrepresented to CCMF that the check it deposited to the IOLTA account had "cleared" when it in fact had not, (Pl.'s Resp. to Def. Citizens Bank, N.A.'s Statement of Material Facts ¶¶ 67–68 ("Yes, the money is there. You are all set.")), and that CCMF relied on Citizens' statement when it wired funds out of the account. Citizens' primary argument against this claim is that reliance on that statement was unreasonable as a matter of law.

As an initial matter, it is important to address whether New York or Massachusetts law applies to this claim. In a case based on diversity jurisdiction, as this one is, the choice of law principles of the forum State apply. Massachusetts law permits parties to choose the body of law that will govern their contractual relationship. Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998). Here, the Automated Wire Transfer Request that Colucci executed includes a choice of law provision that selects New York law to govern the transaction. (Decl. of Geoffrey W. Millsom, Esq., Ex. G ¶ 20 (dkt. no. 32-7)). The choice of law provision applies to this claim because when a defendant's negligent misrepresentation is alleged to have induced the plaintiff to enter into a contract, such a provision in the induced contract may be applied. See Neuro-Rehab Assocs. v.

3

AMRESCO Commercial Fin., L.L.C., No. CIVA 05-12338-GAO, 2006 WL 1704258, at *8 (D. Mass. June 19, 2006). CCMF has not advanced any argument that the choice of law provision should not apply to this claim.

Citizens argues that the negligent misrepresentation claim fails because, under New York law, reasonable reliance is a required element of this cause of action, see Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citation omitted), and CCMF's reliance on the alleged misrepresentation was unreasonable as a matter of law. Citizens cites four cases remarkably similar in their facts to this one, where a law firm sued a bank for negligent misrepresentation based on an assurance from the bank that a check had cleared or the funds were available. In each case, the court found that the law firm's reliance on such a statement was unreasonable as a matter of law. Law Offices of Oliver Zhou v. Citibank, N.A., No. 15 Civ. 5266 (ER), 2016 WL 2889060, at *6 (S.D.N.Y. May 17, 2016); JPMorgan Chase Bank, N.A. v. Freyberg, 171 F. Supp. 3d 178, 190 (S.D.N.Y. 2016); Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 958 N.E.2d 77, 85 (N.Y. 2011); Margot J. Garant, Inc. v. Suffolk Cty Nat'l Bank, No. 66873-15, 2015 WL 669452, at *8 (N.Y. Sup. Ct. Feb. 11, 2015).

The statement from Citizens' employee Zayas ("Yes, the money is there. You are all set.") that CCMF relied on in deciding to execute the wire transfer is very similar to the statements made by the bank employees in the cited cases, see Oliver Zhou, 2016 WL 2889060, at *6 ("the money was available" and "the fund was good"); Freyberg, 171 F. Supp. 3d at 190 ("the funds were unquestionably in [the plaintiff's] account"); Greenberg, Trager & Herbst, 958 N.E.2d at 83 ("the check had 'cleared' and the funds were available" (footnote omitted)); Margot J. Garant, 2015 WL 669452, at *7–8 ("the check had 'cleared' and . . . the funds were 'available'"), and those courts held that reliance on such a statement was unreasonable and dismissed the negligent

4

misrepresentation claim. These precedents require the conclusion that any reliance by CCMF on Zayas' statement concerning the availability of the funds was unreasonable as a matter of law.

B. Promissory Estoppel

CCMF failed to oppose Citizens' argument for summary judgment on the promissory estoppel claim; therefore the claim is deemed to be waived. See Tian v. Aspen Tech., Inc., 53 F. Supp. 3d 345, 369 n.8 (D. Mass. 2014) (adopting report and recommendation); see also Leader v. Harvard Univ. Bd. of Overseers, No. CV 16-10254-DJC, 2017 WL 1064160, at *6 (D. Mass. Mar. 17, 2017).

This claim would have been decided in favor of Citizens regardless of the waiver because the doctrine of promissory estoppel "is implicated only in 'the absence of an express contract.'" Charest v. President & Fellows of Harvard Coll., Civil Action No. 13-11556-DPW, 2016 WL 614368, at *21 (D. Mass. Feb. 16, 2016) (quoting Northrup v. Brigham, 826 N.E.2d 239, 244 (Mass. App. Ct. 2005)). Here, it is clear that two express contracts, the Business Deposit Account Agreement and Automated Wire Transfer Request, govern the relationship between CCMF and Citizens. Additionally, promissory estoppel requires a party to reasonably rely on an unambiguous promise, R. I. Hosp. Tr. Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995), and, as discussed with regard to the negligent misrepresentation, CCMF's reliance on Zayas' statement was unreasonable as a matter of law.

C. Chapter 93A

CCMF's primary argument in support of its Chapter 93A claim is that it is derivative of its negligent misrepresentation claim and an abandoned negligence claim. No independent ground upon which the 93A claim can be based is proffered.

5

## III. Conclusion

Citizens' Motion for Summary Judgment (dkt. no. 29) is GRANTED. The Clerk will enter judgment for the defendant and close the case.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge